IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARY BRADFORD, )
　　　　)
　　Plaintiff, )
　　　　)
v. ) Case No. CV-00-TMP-3295-S
　　　　)
ALFA INSURANCE COMPANY, )
　　　　)
　　Defendant. )

**ENTERED**

**JAN 16 2003**

**MEMORANDUM OPINION**

　　This cause is before the court on the motion for summary judgment filed April 1, 2002, by the defendant, Alfa Insurance Company ("Alfa"). Defendant seeks dismissal of all of plaintiff's claims. This matter has been fully briefed and the court has considered the evidence and the arguments set forth by both parties. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court submits this memorandum opinion.

**I. FACTS**

　　For purpose of determining the defendant's motion for summary judgment, the following facts are taken as true:

　　Mary Bradford, the plaintiff, is an African American female. She has a degree in accounting from Alabama State University.

Bradford first became employed by Alfa in 1973, when she was hired as a file clerk. In 1975, she was promoted to a supervisory position in the accounting department, overseeing the work of five employees. In 1981, she resigned from Alfa to accept a job with the United States Postal Service. She remained with the Postal Service for only two months, then re-applied for a position at Alfa. She was re-hired as a secretary. The secretarial positions were later renamed Customer Service Representatives ("CSRs"). She was classified as a CSR I, the beginning level in a structure that included CSR I, CSR II, and CSR III. A CSR I is an entry-level secretarial position. A CSR II is a fully trained CSR. A CSR III has supervisory responsibilities over other CSRs.

Alfa operates its business of selling insurance from locations called service centers. Service centers employ agents, who sell policies, and CSRs, who provide administrative support and assist agents. A service center with multiple agents is assigned a supervising CSR III, who manages the office and supervises the other CSRs. The agents report to a District Manager, and the CSRs report to a District Supervisor.

About a year after being hired as a CSR I, Bradford was promoted to CSR II. In 1983, she became a CSR III. As a CSR III, plaintiff had supervisory duties. She worked at Alfa's Fleming Road service center in Montgomery, Alabama. She trained and

supervised CSRs at that location. During summers, she sometimes had five CSRs under her supervision. In 1989, the Fleming Road service center was relocated to Governor's Square. Bradford continues to work as a CSR III at the Governor's Square center, where she works with agents Will Fuller and Michael Shane Woodard and supervises one or two other CSRs. Bradford never has been disciplined for her performance on the job.

In 1997, during a service center meeting with the District Manager, David Christenberry, and the District Supervisor, Judy Rittenour, plaintiff commented on the performance of one of the agents in her service center. Christenberry and Rittenour considered Bradford's attitude toward the agent to be negative and counter-productive.[1]

In 1999, Rittenour announced plans to retire as District Supervisor. Bradford told Christenberry that she was interested in a promotion to the vacancy left by Rittenour. Christenberry told Bradford he would contact her when interviews were conducted. In October 1999, Bradford interviewed for the job. In addition to

---

[1] Christenberry and Rittenour have testified that they met with plaintiff and explained to her that she should set the example in her center and should help agents reach their goals. Plaintiff denies that she was ever "counseled" concerning her conduct.

3

Bradford, four white females and one other black female[2] also interviewed for the position. Bradford was interviewed by Christenberry and Susan Adcock, Regional Administrator, both of whom are white. The position was given to Jill Yaser, a white female. It is this promotion decision that plaintiff claims constitutes racial discrimination.

Yaser first was hired by Alfa in 1970 as a part-time secretary. In 1978 she became a full-time CSR, and in 1979 she was promoted to District Secretary, a position now known as District Supervisor. Yaser was commended on her work as District Secretary. Yaser left Alfa in 1980, apparently without giving notice. She was re-hired in 1983. She was promoted to CSR III in 1987. As a CSR III, Yaser supervised four CSRs in Alfa's service center on Vaughn Road. At the time of her interview for the job made the subject of this lawsuit, Yaser was a CSR III, supervising four CSRs. The service center where Yaser worked was operating at a loss ratio that exceeded the company goal.[3] Since 1993, Yaser had volunteered

---

[2] The other black female, Edwina Clark, similarly filed a lawsuit against Alfa concerning the promotion of Jill Yaser and other alleged discrimination. By order dated May 28, 2002, her claims were dismissed on defendant's motion for summary judgment in <u>Clark v. Alfa Insurance Co.</u>, CV-00-AR-3296-S, in the United States District Court for the Northern District of Alabama.

[3] Alfa rates the performance of its service centers in part by the loss ratio, which is determined by comparing premiums

4

for extra projects at Alfa and had been selected to help implement a new computer program for the company, a project that took several years. Yaser did not have a college degree.

During the interview process, one of the agents from Yaser's office contacted Christenberry and Adcock to recommend Yaser for the promotion. Another agent came forward to tell Adcock that Yaser would be a good District Supervisor. Rittenour, who held the position prior to Yaser, Tracey Reid, a former Regional Administrator, and Hardy Bryan, Yaser's former District Manager, also recommended Yaser for the job. A claims adjuster from Yaser's service center also gave unsolicited, favorable comments about Yaser to Christenberry. None of Bradford's co-workers or supervisors provided any unsolicited recommendation.[4]

---

paid into a center against the claims paid through that center. Alfa views the loss ratio as one measure of CSR performance because the loss ratio reflects how well the CSRs perform in re-asking underwriting questions at the time that policies are renewed. Bradford's center did not meet its goal in the area of loss ratio during 1995 or 2000.

[4] Bradford provides the statement of one of the agents she works with who testifies that he would have recommended her for the job if he had been contacted. Defendant points out that the recommendations of Yaser came unsolicited, before the job was awarded. Plaintiff misses the point - that an unsolicited recommendation by a co-worker who went out of his way to praise an applicant is more valuable than the response to a direct inquiry, much less a statement of what a co-worker "would" have said "if" contacted. Plaintiff's evidence does not refute what Christenberry states he knew when he interviewed Bradford or what

5

Prior to the interview, Bradford "understood"[5] that a college degree was a requirement for the District Supervisor job. During the interview, Adcock informed Bradford that she did not require a District Supervisor to have a college degree because it "limited her as to who she could hire."[6] Adcock told Bradford she had once hired someone with a degree and that employee "did not work out."[7]

After the interviews were completed, Christenberry and Adcock told Bradford to come in for a second interview. At the second

---

his hiring decision was based upon. The fact that an employer might have made a different hiring decision if it had sought out additional information about one applicant does not mean that the decision it did make was in any way discriminatory. The defendant had no affirmative duty to question each applicant's co-workers about the applicant's qualifications for the job.

[5] Bradford does not offer any explanation as to how she came to get this understanding. In her declaration, Bradford says she was "led to believe" that a degree was required for the job of District Supervisor. Both Christenberry and Adcock have stated that a college degree is not a requirement.

[6] Bradford also testified, when asked why she felt she was more qualified than Yaser: "I know they said a degree was not part of the requirements, but I do have a degree and that should give me some edge as far as my ability to expand more, to have more ideas."

[7] Christenberry testified that a college degree is not required for the job of District Supervisor and that he never told Bradford a degree was a requirement. Adcock testified that she was unaware that there had ever been a requirement that a District Supervisor have a college degree. She testified that she did not "put a lot of weight" in a degree as an aspect of that job.

6

meeting, they told her they had offered Yaser the job of District Supervisor.

When Christenberry and Adcock told Bradford that Yaser had been selected for the job, they told her that Bradford and Yaser had answered most of the interview questions in a similar manner. They told Bradford that Yaser had the advantage because she had participated in special projects and had taken an active role in meetings at the home office. Bradford responded that she had never been selected for any special projects, although she once volunteered for one.

On November 15, 2000, Bradford filed the complaint commencing this action.

## II.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.

574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

Defendant seeks summary adjudication of all of plaintiff's claims.  Plaintiff has alleged that she was wrongfully denied a promotion to a "loss control" job, that she was wrongfully denied a promotion to District Supervisor, that she was discriminated

in that she was paid less than white employees, and that she was retaliated against in violation of Title VII.

The court first notes that plaintiff has abandoned her age discrimination claim and it is due to be dismissed. Plaintiff also has stated that she does not oppose the motion for summary judgment as to her claims relating to pay and retaliation. Furthermore, plaintiff has failed to file any materials in opposition to the motion for summary judgment as to her claim relating to a promotion to a "loss control" job, and there is not sufficient evidence set forth by plaintiff to withstand defendant's motion.[8] Accordingly, all of the claims except the claim relating to a promotion to District Supervisor in October 1999 are due to be dismissed.

### A. Pretext

Bradford asserts, and the court assumes, that she has established a *prima facie* case in the context of a denial of the promotion to District Supervisor by showing that: (1) she is a

---

[8] Defendant's motion establishes not only that the plaintiff failed to file a timely EEOC charge of discrimination with respect to this promotion claim, but also that she cannot overcome the defendant's legitimate non-discriminatory reason for giving that promotion to someone else, namely that the person promoted had real estate appraisal experience not possessed by plaintiff. Absent some refutation by the plaintiff, which she has not offered, the defendant's motion establishes its entitled to summary judgment on this particular promotion claim.

11

member of a protected class; (2) she applied for and was qualified for the job; (3) she was rejected for the position; and (4) the position was filled by a person outside the protected class.  The defendant does not dispute that plaintiff has established a *prima facie* case, but argues that her claim is due to be denied because Alfa has offered a legitimate, non-discriminatory reason for its actions, and the plaintiff has failed to show that reason is pretextual.

Alfa asserts that Yaser was viewed as better qualified for the job than Bradford, based upon the fact that she (1) had performed the duties of District Supervisor in the past, (2) had demonstrated leadership skills and dedication by performing special duties; (3) was effectively managing more CSRs than any other applicant at the time of the interview; and (4) received several unsolicited recommendations from co-workers, agents, and supervisors.

Once the employer meets its burden of articulating a non-discriminatory reason, the burden shifts back to the plaintiff to show that the reason is either not worthy of belief or that, in light of all the evidence, a discriminatory reason more likely motivated the decision than the proferred reason.  <u>Standard v. A.B.E.L. Servs. Inc.</u>, 161 F.3d 1318, 1331-33 (11th Cir. 1998), citing <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir.

1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998). Because Alfa has offered several nondiscriminatory reasons for the promotion decision, in order to overcome the motion for summary judgment, Bradford must demonstrate by competent, admissible evidence that Alfa's nondiscriminatory reason is merely a pretext for racial discrimination. She must show not only that Alfa's articulated reason is false, but also that Alfa's true reason for not promoting her was discriminatory. See Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993). It is not the duty of this court to evaluate whether the decision to promote Yaser instead of Bradford was fair or wise as a business or employment decision; employers are free to make unfair or unwise employment decisions so long as they do not violate anti-discrimination statutes. See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991). Moreover, in a case involving the issue of which applicant is more qualified, plaintiffs must prove pretext by showing "more than superior qualifications; rather, they must show that they were so much more qualified that the disparity virtually jumps off the page and slaps one in the face." Walker v. Prudential Property and Casualty Insurance Co., 286 F.3d 1270, 1277 (11th Cir. 2002).

In this case, the plaintiff argues that she was better qualified than Yaser, and disputes Alfa's assessments of Yaser's talents. This quibbling over qualifications is not sufficient to overcome a well supported motion for summary judgment; however, Bradford offers additional evidence that, if believed, could lead a reasonable juror to conclude that Alfa's proffered reason is a pretext. Bradford supports her argument that the real reason she was not promoted was her race by pointing out that she "understood" that a college degree was required for the job, but that Adcock told her during the interview that the degree requirement had been removed because it "limited her as far as who she could hire" for the job.[9] The defendant has shown that a "job description questionnaire" states that qualifications for the job of District Supervisor are a high school diploma. (Ex. 1 to Affidavit of Adcock, p.3). The questionnaire, however, is dated 1991, and

---

[9] Bradford testified to these statements in her deposition. In her "declaration" filed in response to the motion for summary judgment, she stated that she "had initially been led to believe" a degree was required, and that Adcock said she "decided to remove the college degree requirement because it would limit her in who she could hire." If Bradford had provided any evidence that the requirement ever existed, or that anyone representing Alfa had misled her, or that Adcock had "removed the requirement" in order to promote Yaser or in order to avoid promoting an African American, such facts might demonstrate a discriminatory animus. But the mere fact that Bradford misunderstood the requirements, and that Alfa did not want to limit the pool of candidates to college graduates, does not evidence discrimination.

appears to be only one employee's assessment of the qualities needed in a District Supervisor. Defendant has not shown any job description that clarifies the qualifications for the position. The court finds that, if a jury were to believe that Alfa had required a college degree for the position of District Supervisor in the past and had "removed" that requirement in order to avoid hiring an African American applicant, a reasonable jury could conclude that the proffered reason for hiring Yaser was a pretext and that the real reason Alfa chose Yaser over Bradford was race.

In addition, the court notes that Bradford argues that she was never selected for a special project, even though she volunteered. Yaser, on the other hand, was selected to supervise a computer project that took years to implement. Alfa has not given any reason for its failure to offer special projects to Bradford, if such are viewed as qualities that improve ones attractiveness for promotion.

The court's job is to consider whether the evidence "presents a sufficient disagreement to require submission to a jury." <u>Combs</u>, 106 F.3d at 1526. The court finds that Bradford has provided some evidence that the reason given by Alfa is a pretext. Accordingly, the motion for summary judgment as to plaintiff's District Supervisor promotion claim is due to be denied.

15

## IV. CONCLUSION

Based upon the foregoing undisputed facts and legal conclusions, the court finds that the motion for summary judgment filed by defendant Alfa (court document 43) is due to be GRANTED IN PART and DENIED IN PART. As to all of plaintiff's claims relating to age and retaliation, the motion is due to be GRANTED and the claims are due to be DISMISSED WITH PREJUDICE. As to her claim relating to a "loss control" promotion the motion also is due to be GRANTED and the claim is due to be DISMISSED WITH PREJUDICE. The defendant's motion as to Bradford's race discrimination claim arising from the promotion to the job of District Supervisor, however, is due to be DENIED. A separate order will be entered granting in part and denying in part the motion and dismissing the above-listed claims.

DATED this 15th day of January, 2003.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE